UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARWOOD GROUP LLC,**<br>**733 Third Avenue**<br>**New York, New York 10017**<br><br>     **Plaintiff,**<br><br>**v.**<br><br>**HEALTH POLICY SOURCE, INC., MONICA**<br>**TENCATE,** *individually,* **DANIEL BOSTON,**<br>*individually,* **JOHN DOE I** *and* **JOHN DOE II,**<br>**801 Pennsylvania Ave., NW**<br>**Suite 625-A**<br>**Washington, DC  20004**<br>                    **Defendants.**<br>------------------------------------------------------------ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)     **Case No.**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff, Marwood Group LLC, by its attorneys, Jackson Lewis LLP, for its Complaint for Injunctive Relief and Damages against Defendants Health Policy Source, Inc., Monica Tencate, individually, Daniel Boston, individually, John Doe I and John Doe II, alleges as follows:

### THE PARTIES, VENUE AND JURISDICTION

1.     Plaintiff Marwood Group LLC ("Marwood" or "Company") is a limited liability company existing by virtue of the laws of the State of New York, and maintains a principal place of business at 733 Third Avenue, 11th Floor, New York, New York 10017.  Marwood also maintains an office located within Washington, D.C. and is duly licensed to do business in Washington, D.C.

2.     Upon information and belief, Defendant Health Policy Source, Inc. ("HPS" or

"Defendant") is or was apparently a corporation existing by virtue of the laws of the District of Columbia, whose license was revoked by the District of Columbia on or about December 5, 2001, yet presently continues to conduct business at 801 Pennsylvania Avenue, N.W., Suite 625-A, Washington, D.C. 20004.

3.  Upon information and belief, Defendant Monica Tencate ("Tencate" or "Defendant"), is an owner of Defendant HPS, and appears to be individually liable for any acts complained of in this complaint as there does not appear to be a proper corporation under which she operates Defendant HPS.

4.  Upon information and belief, Defendant Daniel Boston ("Boston" or "Defendant"), is an owner of Defendant HPS, and appears to be individually liable for any acts complained of in this complaint as there does not appear to be a proper corporation under which he operates Defendant HPS.

5.  Upon information and belief, Defendants John Doe I and John Doe II ("Doe" or "Defendant"), are individuals, currently unknown by Plaintiff, who may be owners of Defendant HPS, and would also appear to be individually liable for any acts complained of in this complaint.

6.  HPS is a company that performs work, labor and services for its clients which are competitive in nature to the work, labor and services which Marwood performs for its clients.

7.  Tencate, Boston and the Doe Defendants operate HPS as a business that performs work, labor and services for its clients which are competitive in nature to the work, labor and services which Marwood performs for its clients.

8.  Marwood employed an individual, Katie Simons Pahner ("Pahner"), from September 5, 2006 until September 7, 2007, when Pahner voluntarily resigned her employment from Marwood and shortly thereafter commenced employment with HPS.

9.  Pahner was hired as Associate within Marwood's Healthcare Research Group, and remained in this position until she was promoted to the position of Vice-President, wherein she also received increase in salary.

10.  Pahner's duties while at Marwood are identical in nature to the duties she is performing for HPS, Tencate, Boston and the Doe Defendants.

11.  Venue is properly laid in this district pursuant to 28 U.S.C. §1391(a) because Defendants HPS, Tencate, Boston and the Doe Defendants have their offices located within the District of Columbia and the events giving rise to the action herein occurred all within the District of Columbia.

12.  Plaintiff invokes the jurisdiction of this Court on the basis of diversity of citizenship, pursuant to 28 U.S.C. §1332, *et seq.*, in that the parties are residents, are domiciled, and/or are incorporated in different states. Based on current good faith information and belief, the amount in controversy, exclusive of interest and costs, will exceed $75,000.00, or any other statutory minimum, vesting jurisdiction in this Court.

## BACKGROUND

13.  Marwood is in the Healthcare Advisory and Asset Management business. Marwood employs over 60 individuals and provides services to corporations, trade associations, and institutional investors.

3

14.    Marwood's business is divided into several specialty groups. Pahner was employed to work entirely within the Healthcare Research Group and worked at Marwood's Washington, D.C. offices.

15.    The Healthcare Research Group ("HRG") at Marwood focuses exclusively on tracking and analyzing regulatory and legislative catalysts within all sectors of the healthcare marketplace including services, managed care, biotech, medical devices and pharmaceuticals.

16.    HRG is comprised of former Congressional staffers, medical industry professionals, and healthcare policy veterans, who work on: (a) distributing to clients regular healthcare reports and topical reports, and (b) run the Group's concierge desk to provide clients with full time communications with Marwood's political strategist, research staff members and other contacts.

17.    Defendant Pahner had a background which is well suited for working at HRG, as her previous employment involved working for the Department of Health and Human Services as a Legislative Analyst pertaining specifically to Medicare and Medicaid legislation. This exposure to the workings on "the Hill" makes her relatively unique in the ability to assist Marwood's clientele who call upon the services of HRG to obtain information regarding legislation pertaining to the healthcare industry.

**PAHNER'S AGREEMENT SIGNED UPON**
**HER EMPLOYMENT WITH MARWOOD**

18.    Because the nature of her work involved providing highly specialized information to Marwood's clients, and because Marwood had developed a highly specialized client base which was interested in this very narrow area of healthcare industry research, Marwood insisted upon, *inter alia*, Pahner entering into non-disclosure and non-competition

4

covenants as a condition of her accepting employment with Marwood. Pahner signed

such an Employment Agreement (Exhibit "A", *infra*) ("Agreement"), containing the

aforesaid covenants prior to commencing her employment with Marwood.

19.    Specifically, ¶7 of the Agreement pertains to her Non-Disclosure covenant to Marwood,

as Pahner understood and agreed that her employment would bring her in close contact

with many confidential affairs of the Company:

> ...including information about operational methods, customer lists, client engagements, arrangements, Developments and other business affairs, methods, strategies and techniques, computer software and other proprietary intellectual property, other information not readily available to the public and plans for future developments related thereto ("Confidential Information").

Exhibit "A" at ¶7. She also agreed that her services were "..of a special, unique, unusual,

extraordinary and intellectual character." <u>Id</u>.

20.    Within ¶7 of the Agreement, Pahner also agreed that she would, *inter alia*:

> (a)    not disclose to others or use for her own benefit any Confidential Information known to Employee which are not otherwise in the public domain, either during or after the Term of Employment, except with the Company's prior written consent....

<u>Id.</u>

21.    Similarly, ¶8(a) of the Agreement pertains to her Non-Competition covenant to

Marwood, as she agreed, *inter alia*, that:

> ...the services rendered by the Employee hereunder are unique and irreplaceable. The Employee hereby agrees that, during the Term of Employment and for a period of two years thereafter, the Employee shall not in the United States or in those foreign countries where the Company conducts business (i) directly or indirectly engage in, or be employed by, any business that engages

in, competitive business activities…(iii) be employed by (whether as an employee or independent contractor) or solicit (whether individually or as an employee of another business) any person or entity which was, prior to or during the Term of Employment, a client, joint venture partner or other business partner of the Company or to whom the Company presented a proposal, written or oral, such relationship during the 12 months preceding the date of termination of the Term of Employment; (iv) contact or solicit any former or current customer or client of the Company (including customers and clients of that Company is in the process of soliciting at the time of Employee's termination) in an effort to establish, expand, develop or otherwise further a business relationship with such customer or client…

Id.

22.     Notwithstanding the above referenced covenants, Pahner contacted her direct supervisor on or about September 5, 2007 that she was voluntarily resigning her position at Marwood, and that she was taking a position at HPS.

23.     As stated above, HPS is a company which is one of the few entities which directly competes with Marwood's HRG business, and Tencate, Boston and the Doe Defendants, in operating HPS, likewise directly compete with Marwood's HRG business. HPS represents similar clients of Marwood, and in some instances have represented identical clients as Marwood, as well as direct competitors of Marwood.

24.     Management at Marwood discussed with Pahner her intentions to leave her employment and begin work at HPS. She was reminded of her Non-Disclosure and Non-Competition covenants and that Marwood understood HPS's business was such that her taking of employment with them would be violative of the covenants, as it would, *inter alia*, be highly likely that she would have access to Marwood's clients and methods of providing services to its clients which would give HPS an unfair competitive advantage over Marwood.

25.    Pahner advised Marwood's management that she had provided a copy of her Employment Agreement to HPS, Tencate, Boston and the Doe Defendants, and that she was advised by HPS, Tencate, Boston and the Doe Defendants that the Agreement would not be a problem for her to commence employment with HPS, Tencate, Boston and the Doe Defendants. Pahner stated that she was assured by her new employers that their legal advisors had looked over the Agreement and were comfortable with her coming to work for them.

26.    A review of HPS's internet website (http://www.healthpolicysource.com/) shows that HPS provides healthcare consulting services, including "tracking and monitoring legislation and regulations", "providing political assessments and strategic guidance", "analyzing current laws and regulations", "providing hearing summaries and analysis of key policy events" and "intelligence gathering" – the <u>exact</u> services that the Health Research Group at Marwood provides and, specifically, what Pahner was involved in during her employment with Marwood.

27.    The general business activities of HPS, Tencate, Boston and the Doe Defendants are nearly identical to Marwood's HRG group, as it is a specialty firm that provides information tracking to clients on legislative and regulatory events within the healthcare industry.

28.    Pahner's last date of employment at Marwood was September 7, 2007.

29.    On September 10, 2007, Marwood, through its counsel, sent a letter to HPS advising it that employing Pahner would be violative of the covenants contained in her Agreement. The letter asked HPS to confirm that it would not accept her employment, did not/would not receive trade secret or confidential information belonging to Marwood, and that HPS

would not interfere with the restrictive contractual relations Pahner has with Marwood. A copy of the September 10, 2007 letter from Attorney Joel S. Lever is annexed hereto as Exhibit "B".

30. HPS, Tencate, Boston or the Doe Defendants did not respond to the September 10, 2007 letter in any fashion.

31. Prior to commencing this lawsuit, Marwood caused another letter to be sent to HPS requesting that it respond to the September 10, 2007 letter. This letter, dated September 19, 2007, is annexed hereto as Exhibit "C".

32. HPS, Tencate, Boston or the Doe Defendants also did not respond to this letter.

33. Marwood also sent letters to Pahner through counsel, on September 10, 2007 and September 19, 2007, similarly advising Pahner that her employment with HPS would be improper under the covenants that she entered into and due to the fact that HPS is and was a direct competitor of Marwood. Copies of both letters to Pahner are annexed hereto as Exhibits "D" and "E" respectively.

34. Pahner did not respond to either of these letters.

35. Upon information and belief, Pahner has commenced her employment with HPS, Tencate, Boston and the Doe Defendants and is currently employed there.

36. There is a separate lawsuit filed against Pahner by Marwood in the Supreme Court of the State of New York, County of New York, whereby Marwood is seeking to enjoin Pahner from continuing her employment with HPS.

37. Although HPS was requested by the New York Supreme Court to submit to the jurisdiction of the Court to avoid duplicitous litigation, HPS formally notified the Court

and Marwood, through counsel that it would not voluntarily submit to the jurisdiction of the Court.

38. HPS, Tencate, Boston and the Doe Defendants was put on notice of the restrictive covenants which exist between Pahner and Marwood, prior to the time that Pahner became employed by HPS, Tencate, Boston and the Doe Defendants. Notwithstanding this knowledge, HPS, Tencate, Boston and the Doe Defendants went ahead with the hiring of Pahner and refuses to honor the contractual relationship which was entered into between Pahner and Marwood.

39. If an injunction is granted in favor of Marwood against HPS, Tencate, Boston and the Doe Defendants, it will not harm them as they never should have hired Pahner in the first place and should have looked for an employee who was not burdened with a reasonable restrictive covenant.

40. Further, compelling HPS, Tencate, Boston and the Doe Defendants to refrain from employing someone like Pahner, who, for a two year period, should not be working in a competitive business, in order to give Marwood the ability to keep its business relationships with its clients intact, cannot be considered unreasonable.

41. On the other hand, if an injunction against HPS, Tencate, Boston and the Doe Defendants is not granted, and they are free to continue with employing Pahner, Marwood's proprietary, confidential and secret information will directly or indirectly (and inevitably) be disclosed unfairly to HPS, Tencate, Boston and the Doe Defendants. All of Marwood's client information, together with all of the processes, methods and means by which Marwood analyzes healthcare industry information and provides informational

services to clients would be at severe risk of loss to its direct competitor. Such a loss should not be condoned.

42. Furthermore, HPS, Tencate, Boston and the Doe Defendants will be able to use the confidential information owned by Marwood through Pahner, if she is permitted to remain employed by HPS, Tencate, Boston and the Doe Defendants.

43. Whether HPS, Tencate, Boston and the Doe Defendants admit it or not, the business of the Health Research Group at Marwood is so closely aligned to the work done by HPS, Tencate, Boston and the Doe Defendants that Marwood's client information, operational methods, client engagements, arrangements, developments, methods, strategies, techniques, computer software and other proprietary intellectual property will be improperly utilized in her day-to-day work for them. Harm is sure to be caused by Pahner's knowledge of the forestated information, and other confidential information at a direct competitor of Marwood.

44. HPS, Tencate, Boston and the Doe Defendants had attempted to hire another Marwood employee who was doing the identical work that Pahner did for Marwood.

45. Although this individual did not leave Marwood for HPS, Tencate, Boston and the Doe Defendants, such conduct proves that HPS, Tencate, Boston and the Doe Defendants are direct competitors of Marwood, as they have a need for the specialized kind of services which employees like Pahner can give to clients.

46. Marwood will suffer immediate and irreparable injury, loss and damage if HPS, Tencate, Boston and the Doe Defendants are not restrained and enjoined from engaging in the conduct complained of herein. Marwood has and will have no adequate remedy at law, for

if any one of its clients is taken improperly by HPS, Tencate, Boston or the Doe Defendants, such will be a great monetary loss which will continue well into the future.

47. Further, the loss of proprietary information is lost forever once it is given to a third party.

48. As stated above, greater injury will be inflicted upon Plaintiff if the relief requested is denied than the slight, if any, inconvenience which might be inflicted to Defendants were the relief requested granted.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Tortious Interference With Contract)

49. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 48 of the Complaint, with the same force and effect as though set forth herein at Paragraph 49.

50. At all times relevant hereto, HPS, Tencate, Boston and the Doe Defendants had knowledge of the Employment Agreement between Marwood and Pahner, and HPS, Tencate, Boston and the Doe Defendants acted with full knowledge thereof.

51. Upon information and belief, HPS, Tencate, Boston and the Doe Defendants advised and counseled at least one other employee to leave Marwood's employment.

52. Upon information and belief, HPS, Tencate, Boston and the Doe Defendants advised Pahner that it had looked over the Employment Agreement she had with Marwood, and that notwithstanding such review, they still wanted Pahner to become an employee of theirs.

53. By virtue of such conduct, HPS, Tencate, Boston and the Doe Defendants have made serious efforts to wrongfully and unfairly compete against Marwood, and in so doing, HPS, Tencate, Boston and the Doe Defendants have interfered with and continue to

interfere with the Employment Agreement existing between Marwood and Pahner, without proper or legal justification.

54. By virtue of its conduct, HPS, Tencate, Boston and the Doe Defendants knowingly, intentionally and maliciously sought to harm Marwood and continue to seek to harm Marwood.

55. By virtue of its conduct, HPS, Tencate, Boston and the Doe Defendants used and are using unlawful means to harm Marwood.

56. HPS, Tencate, Boston and the Doe Defendants acted with intentional, malicious and/or wanton disregard of Marwood's rights and continues to do so.

57. As a direct and proximate result the conduct of HPS, Tencate, Boston and the Doe Defendants, Marwood shall suffer damages in an amount which is presently unascertainable, but for which HPS, Tencate, Boston and the Doe Defendants are liable for, together with interest and exemplary damages.

58. Unless enjoined by this Court, HPS's, Tencate's, Boston's and the Doe Defendants' instigation and encouragement of the breach of the Employment Agreement between Pahner and Marwood will continue and will cause Marwood to suffer irreparable harm.

59. Marwood has no adequate remedy at law to prevent this irreparable harm.

60. Accordingly, Marwood is entitled to an injunction prohibiting HPS, Tencate, Boston and the Doe Defendants from continuing to instigate and encourage the breach of the Employment Agreement between Marwood and Pahner.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Damages for Tortious Interference)

61.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 and through 60 of the Complaint, with the same force and effect as though set forth herein at Paragraph 61.

62.     Marwood is entitled to compensatory damages for HPS's, Tencate's, Boston's and the Doe Defendants' tortious interference with Marwood's contract with Pahner.

63.     Marwood is entitled to punitive damages for the willful and malicious conduct in tortiously interfering with the contract as alleged herein.

## AS AND FOR THIRD CAUSE OF ACTION
### (Misappropriation of Confidential Information)

64.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 63 of the Petition, with the same force and effect as though set forth herein at Paragraph 64.

65.     By virtue of her Employment Agreement with Marwood, Pahner owed a duty to Marwood not to use, disclose or otherwise misappropriate Marwood's confidential information, which included the names and addresses of Marwood's customers, its pricing information and other data as mentioned in ¶¶41 and 43, *supra*.

66.     By virtue of this conduct, Pahner has breached her duty not to misappropriate Marwood's confidential information, and HPS, Tencate, Boston and the Doe Defendants are the direct recipients and benefactors of such breach of duty by Pahner.

67.     Pahner shall inevitably use and misappropriate Marwood's confidential information, all in violation of her Employment Agreement, and HPS, Tencate, Boston and the Doe Defendants are the direct recipients and benefactors of such inevitable use of Marwood's confidential information by Pahner.

68.  HPS, Tencate, Boston and the Doe Defendants knowingly and improperly conspired with Pahner and are improperly receiving and using for their own benefit confidential information belonging to Marwood.

69.  HPS, Tencate, Boston and the Doe Defendants have acted with intentional, malicious and/or otherwise wanton disregard of Marwood's rights.

70.  As a direct and proximate result of HPS's, Tencate's, Boston's and the Doe Defendants' misappropriation of Marwood's confidential information, Marwood has suffered damages in an amount which is presently unascertainable, but for which HPS, Tencate, Boston and the Doe Defendants are liable.

71.  HPS, Tencate, Boston and the Doe Defendants will profit from the aforesaid misappropriation of Marwood's confidential information, all at the loss and cost borne by Marwood.

72.  Unless enjoined by this Court, the misappropriation of Marwood's confidential information by HPS, Tencate, Boston and the Doe Defendants will continue and will cause Marwood to suffer irreparable harm.

73.  Marwood has no adequate remedy at law to prevent this irreparable harm from occurring.

74.  Marwood is entitled to an injunction prohibiting HPS, Tencate, Boston and the Doe Defendants from misappropriating Marwood's confidential information.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Damages for Misappropriation)

75.  Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 and through 74 of the Petition, with the same force and effect as though set forth herein at Paragraph 75.

76.    Marwood is entitled to compensatory damages for HPS's, Tencate's, Boston's and the Doe Defendants' misappropriation and improper, illegal and wrongful use of Marwood's confidential information.

77.    Marwood is entitled to punitive damages for HPS's, Tencate, Boston and the Doe Defendants' willful and malicious conduct in its misappropriation and improper, illegal and wrongful use of Marwood's confidential information.

**WHEREFORE**, Plaintiff Marwood demands judgment in its favor and against HPS, Tencate, Boston and the Doe Defendants as follows:

1.    On the first cause of action, for compensatory damages, losses and expenses in an amount which presently is unascertainable but is over $500,000.00, plus interest, or for such other or further amount as the Court deems just and proper;

2.    On the first cause of action, for punitive damages in such amount as the Court deems just and proper;

3.    On the first cause of action, enjoining and restraining HPS, Tencate, Boston and the Doe Defendants from instigating and/or encouraging further breaches by Pahner of her restrictive covenants contained in her Employment Agreement with Marwood;

4.    On the second cause of action, for compensatory damages, losses and expenses in an amount which presently is unascertainable but is over $500,000.00, plus interest, as well as punitive damages, and for such other or further amount as the Court deems just and proper;

5.    On the third cause of action, for compensatory damages, losses and expenses in an amount which presently is unascertainable but is over $500,000.00, plus interest and for such other or further amount as the Court deems just and proper;

6.     On the third cause of action, for punitive damages in such amount as the Court deems just and proper;

7.     On the third cause of action, enjoining and restraining HPS, Tencate, Boston and the Doe Defendants from continuing and furthering its wrongful use of misappropriated confidential information and further ordering that HPS, Tencate, Boston and the Doe Defendants return all such misappropriated information to Marwood forthwith, and that no copies be made in any manner, and that if such copies exist, whether in paper or electronic or other means, that such copies shall likewise be turned over to Marwood;

8.     On the third cause of action, enjoining and restraining HPS, Tencate, Boston and the Doe Defendants from instigating and encouraging further breaches of Pahner's duties owed to Marwood;

9.     On the fourth cause of action, for compensatory damages, losses and expenses in an amount which presently is unascertainable but is over $500,000.00, plus interest and for such other or further amount as the Court deems just and proper;

10.     On the fourth cause of action, for punitive damages in such amount as the Court deems just and proper; and

11.     Granting Marwood full and final judgment against HPS, Tencate, Boston and the Doe Defendants for all allowable costs, attorneys' fees and other litigation expenses, and granting to Marwood such other and further relief as the Court deems just and proper.

Respectfully submitted,

**JACKSON LEWIS LLP**

By: _____
Tyler A. Brown
D.C. Bar No. 480693
8614 Westwood Center Drive
Suite 950
Vienna, VA  22182
(703) 821-2189
Fax: (703) 821-2267
brownt@jacksonlewis.com
*Attorneys for Plaintiff*

Dated:    October  30, 2007

# EXHIBIT A

## EMPLOYMENT AGREEMENT

EMPLOYMENT AGREEMENT (the "Agreement"), agreed upon this July 20, 2006 by and between MARWOOD GROUP LLC, a New York limited liability company (the "Company"), and Katie Simons Pahner, an individual (the "Employee").

### PRELIMINARY STATEMENTS

WHEREAS, the Company wishes to employ the Employee as an Associate within the Company's Healthcare Research Group; and

WHEREAS, the Employee wishes to enter into the employ of the Company as an Associate within the Company's Healthcare Research Group; and

NOW, THEREFORE, in consideration of the foregoing and of the respective covenants and agreements of the parties herein contained, the parties hereto, intending to be legally bound, hereby agree as follows:

1. TERM OF EMPLOYMENT.

The Company has agreed to employ the Employee as an Associate within the Company's Healthcare Research Group. Employee agrees and acknowledges that she is an employee at-will and may be terminated by the Company at any time for any reason or for no reason. The Employee shall remain employed from the date hereof until such time as either the Employee or the Company terminates the Employee's employment (such period is referred to herein as the "Term of Employment"). The Company and the Employee have agreed that the Employee's Term of Employment shall begin on September 5, 2006 (the "Effective Date").

2. POSITIONS AND DUTIES.

2.1    Duties. During the Term of Employment the Employee will serve as an Associate within the Company's Healthcare Research Group with the responsibility for interfacing with clients and executing the Company's business plan relating to the Group. The Employee will, during the Term of Employment, serve the Company faithfully, diligently and competently and to the best of her ability strive to achieve the goals set for the Group by the Company's Chief Executive Officer. In the performance of her duties hereunder, the Employee agrees to abide by all applicable federal, state and local laws, rules and regulations and all Company policies and procedures. In addition, the Company shall require, from time to time, that the Employee satisfactorily pass one or more securities licensing and/or other exams. Employee acknowledges that satisfactorily passing such exams in accordance with the Company's set timelines are a condition of continued employment with the Company. The Employee agrees that the Company may modify or alter her duties, responsibilities and client assignments within the Company within its sole and absolute discretion. The Employee shall make the Company the only focus of her business activities and devote all of her working time and energy to the performance of her duties hereunder.

2.2    Office Hours. Employee shall be present at least five full workdays per week in the Company's Washington, D.C. office, when not traveling on Company business. Employee shall adhere to the Company's professional dress code at all times.

Acknowledgment (Please Initial)

Employee: KMP

3.    COMPENSATION.

3.1    Salary. The Company will, commencing with the Effective Date and during the Term of Employment, pay to the Employee as compensation for the performance of her duties and obligations hereunder a salary at a rate equal to eighty thousand dollars ($80,000) per annum ("Compensation"), payable in approximately equal installments not less than monthly and otherwise in accordance with the Company's customary payroll practice. In addition, Employee may be eligible for a fiscal year-end bonus, the amount of which will be determined at the sole discretion of the Company's Chief Executive Officer.

3.2    Non-disclosure. Employee shall not discuss her compensation under this Agreement with, or disclose such information to, any employees or consultants of the Company other than Edward M. Kennedy, Jr., John T. Moore, Thomas Modzelewski or Michael Wasserman.

4.    EXPENSES AND BENEFITS.

4.1    Business Expenses. All travel and other reasonable and ordinary business expenses incident to the rendering of services by the Employee hereunder will be reimbursed by the Company subject to the submission of appropriate vouchers and receipts in accordance with the Company's policies and procedures from time to time in effect. Employee is required to obtain prior approval from Company's Director of Operations for any expense over $100.00.

4.2    Benefits/Insurance. During the Term of Employment, the Employee shall be eligible to participate in existing employee health and disability insurance, pension and retirement benefits and plans according to the policies and procedures of the Company as may be amended from time-to-time.

4.3    Vacation. During the Term of Employment, the Employee shall be entitled to two (2) weeks per year of vacation time, to be taken consistent with the policies of the Company and the effective discharge of the Employee's duties. It is understood that, except under extenuating circumstances, the Employee will follow Company policy of scheduling vacation time during August and/or December each year. In addition, if applicable otherwise, Employee shall give the Chief Executive Officer at least 3 month's notice prior to any vacation.  Unused vacation may not be carried over to succeeding years during the Term of Employment.

4.4    Sick Leave: Holidays. During the term hereof, the Employee shall be entitled to sick leave along with Federal and religious holidays in accordance with the established polices of the Company from time to time in effect.

5    TERMINATION.

This Agreement and the Term of Employment may be terminated at any time for any reason or for no reason.  Upon a termination of this Agreement, the Company shall pay the Employee any accrued Compensation earned through the date of termination, whereupon all other obligations of the Company to the Employee pursuant to this Agreement shall cease.

6.    DISCLOSURE OF PROPRIETARY INFORMATION AND DISCOVERIES.

The Employee shall promptly disclose to the Company all former, current and prospective customer and client lists, former, current and prospective customer and client databases, strategic plans, operating plans, marketing plans and materials, client materials, research, contracts and other information related to the business of the Company or any Affiliate (as hereinafter defined) of the Company (collectively, "Developments") conceived, developed or acquired by her alone or with others during the Term of

2

Acknowledgment (Please Initial)

Employee: AWBP

Employment, whether or not during regular working hours or through the use of materials or facilities of the Company or any Affiliate. All Developments shall be the sole and exclusive property of the Company, and, upon request, the Employee shall promptly deliver to the Company all data and records relating to the Developments. As used in this Agreement, the term "Affiliate" means (1) any individual, general or limited partnership, limited liability company, joint venture, trust or any other entity (any of the foregoing, hereinafter, a "Person") directly or indirectly controlling, controlled by, or under common control with the Company, (2) any Person in which the Company owns or controls 10% or more of the outstanding voting interests, (3) any officer, Member, Manager or Equity Owner of the Company, (4) any Person who is an officer, director, member, manager, general partner, trustee or holder of 10% or more of the voting interests of any Person described in the foregoing clauses (1) – (3). Company together with its Affiliates shall hereinafter be referred to collectively as the "Company".

7.    NON-DISCLOSURE.

The Employee acknowledges that the Employee's employment by the Company will, throughout the Term of Employment, bring the Employee into close contact with many confidential affairs of the Company, including information about operational methods, customer lists, client engagements, fee arrangements, Developments and other business affairs, methods, strategies and techniques, computer software and other proprietary intellectual property, other information not readily available to the public, and plans for future developments relating thereto ("Confidential Information"). Employee further acknowledges that the services to be performed under this Agreement are of a special, unique, unusual, extraordinary and intellectual character. In recognition of the foregoing, Employee covenants and agrees that, both during and after the Term of Employment, Employee will:

    (A)    not disclose to others or use for her own benefit any Confidential Information known to Employee which are not otherwise in the public domain, either during or after the Term of Employment, except with the Company's prior written consent; and

    (B)    (1) promptly disclose to the Company all inventions, computer software, research products and any other intellectual property (the "Intellectual Property") which the Employee conceives or develops during the course of Employee's employment (excluding that which the Employee conceives or develops without the use of the Company's time, resources or facilities and which does not relate to the Company's past, present or planned future activities), as to all of which Employee acknowledges shall be deemed a "work made for hire" under the copyright laws and as to which the Company will own all right, title and interest, (2) affix appropriate legends and copyright notices indicating the Company's ownership of all Intellectual Property and all underlying documentation, and (3) execute such further assignments and other documents as the Company considers necessary to vest, perfect, maintain or defend the Company's right, title and interest in the Intellectual Property.

8.    NON-COMPETITION/DISPARAGEMENT.

(a) The Company and the Employee agree that the services rendered by the Employee hereunder are unique and irreplaceable. The Employee hereby agrees that, during the Term of Employment and for a period of two years thereafter, the Employee shall not in the United States or in those foreign countries where the Company conducts business (i) directly or indirectly engage in, or be employed by any business that engages in, competitive business activities, or lend her name (or any part or variant thereof) to, any business which is competitive with the business of the Company; (ii) solicit any officer, director, employee or agent of the Company to become an officer, director, employee or agent of the Employee, her respective affiliates or any other company or business; (iii) be employed by (whether as an employee

3

or independent contractor) or solicit (whether individually or as an employee of another business) any person or entity which was, prior to or during the Term of Employment, a client, joint venture partner or other business partner of the Company or to whom the Company presented a proposal, written or oral, for such relationship during the 12 months preceding the date of termination of the Term of Employment; (iv) contact or solicit any former or current customer or client of the Company (including customers and clients that the Company is in the process of soliciting at the time of Employee's termination) in an effort to establish, expand, develop or otherwise further a business relationship with such customer or client; (v) work with, work for, employ or otherwise establish any business relationship with another current or former employee of the Company or any business or entity managed or owned directly or indirectly by a current or former employee of the Company; or (vi) engage in or participate in, directly or indirectly, any business conducted under any name that shall be the same as or similar to the name of the Company or any trade name used by any of them. Ownership, in the aggregate, of less than 1% of the outstanding shares of capital stock of any corporation with one or more classes of its capital stock listed on a national securities exchange or publicly held in the over-the-counter market shall not constitute a violation of the foregoing provision.

(b) The Employee further agrees that during the Term of Employment and thereafter, the Employee shall not in the United State or in those foreign countries where the Company conducts business disparage, denounce or otherwise negatively comment on the Company, their respective businesses or activities or their respective members, officers, directors, managers or employees, whether publicly or privately under any circumstances.

## 9.    NO DISCLOSURE TO THE MEDIA.

Except as may be ordered by a court of competent jurisdiction, the Employee agrees that during the Term of Employment, the Employee shall not discuss, write, record, document, film, comment or otherwise communicate to or through any media, journalist, spokesperson, author or other outlet, publicly or privately, any information or details concerning the Company or any other current or former employee, director, member, manager or owner of the Company without the express written permission of the Board of Managers of the Company and each present and former equity owner in the Company, all of which information or details shall be deemed Confidential Information.

Without obtaining the prior written Consent of the Board of Managers of the Company and each present and former equity owner, the Employee (both during and after the Term of Employment) shall not directly or indirectly publish, or cause to be published, any diary, memoir, letter story, photograph, interview, article, essay, account or description or depiction of any kind whatsoever, whether fictionalized or not, concerning the Company or any other current or former employee, director, officer, member, manager or owner of the Company or any aspects of such individuals' or the Company's business, personal or financial affairs, or assist or provide information to others in connection or dissemination of any such material or excerpts thereof. As used in this preceding sentence, the term "publish" and "publication" shall be deemed to include the presentation or reproduction of written, verbal, or visual material in any communication medium, including without limitation, books, magazines, newspapers, theatrical productions of any kind, movies, television, or radio, in any language and any jurisdiction.

## 10.    PROPERTY.

Upon termination of the Term of Employment for any reason or for no reason, the Employee or her personal representative shall promptly deliver to the Company all Intellectual Property, Developments, Confidential Information, computers, computer files, lists, data bases, books, notes, memoranda, plans, reports, records and written data of every kind relating to the business and affairs of the Company and all other property owned by the Company obtained by the Employee while employed by the Company or

4

Acknowledgment (Please Initial)

Employee: NWPP

otherwise serving or acting on behalf of the Company and which is then in the Employee's possession ("Property").

Employee is prohibited from altering, modifying, destroying or removing without the Company's permission Property, Developments or any other proprietary information or discoveries of the Company at any time during the Term of Employment or anytime thereafter. In the event that Employee alters, modifies, destroys or removes without the Company's permission any Property, Developments, or any other proprietary information or discoveries of the Company, such act by Employee may give rise to Employee's immediate termination and Employer reserves the right to prosecute such Employee, civilly and criminally, to the fullest extent of the law.

11.    INJUNCTIVE RELIEF; SEVERABILITY.

    11.1    Injunctive Relief. Notwithstanding anything contrary contained herein, Employee acknowledges and agrees that due to the unique status of the equity owners, employees, members, managers and affiliates of the Company, any breach of this agreement would cause irreparable harm to the Company and such individuals for which damages are not an adequate remedy and that if Employee commits or threatens to commit a breach of any of the provisions of Sections 6, 7, 8, 9, and 10, then, in addition to all other remedies available at law, the Company and its equity owners shall have the right and remedy to have such provisions specifically enforced by any court having equity jurisdiction.

    11.2    Severability. If, at the time of enforcement of any of the provisions of Sections 6, 7, 8, 9 or 10 a court of competent jurisdiction determines that any of the covenants stated therein shall be enforceable only if limited to a more limited scope, shorter period of time or to a smaller geographical area than is therein expressly provided, or otherwise limited, then and in such event, such covenant shall be deemed to be reduced to such extent, duration, geographical scope or in such other manner as otherwise required to make it enforceable, and, in such reduced form, such Sections shall then be enforceable in the manner contemplated hereby.

12.    SUCCESSORS; BINDING AGREEMENT.

    12.1    Binding Effect and Assignment. This Agreement shall be binding upon and inure to the benefit of the parties hereto, their heirs, legal representatives, successors and permitted assigns. The Company may assign its rights and obligations under this Agreement in its sole and absolute discretion.

    12.2    Delegation. The Employee may not delegate or assign the performance of any duties and responsibilities imposed nor assign any rights and benefits created by this Agreement; provided, however, that any amounts which are due and owing to the Employee at the time of her death shall be paid in accordance with the terms of this Agreement to the Employee's devisee, legatee or other designee or if there be no such designee, to the Employee's estate.

    12.3    No Conflicts. The Employee represents that the execution and delivery of this Agreement and the performance of her duties hereunder do not and shall not conflict with the terms of any agreement or obligation to her prior employer or to any other party.

13.    NOTICES.

All notices required or permitted under this Agreement shall be in writing and delivered by any method providing for proof of delivery. Any notice shall be deemed to have been given on the date of receipt. Notices shall be delivered to the parties at the following addresses until a different address has been designated by notice to the other party:

5

13.1    if to the Employee:    Katie Simons Pahner
4020 North Washington Blvd.
#410
Arlington, VA 22201

13.2    if to the Company:    Marwood Group LLC
232 Madison Ave, Suite 906
New York, New York 10016
Attention: Michael Wasserman, General Counsel

## 14.    MISCELLANEOUS.

14.1    **Amendment.** No provision of this Agreement may be modified, waived or discharged unless such waiver, modification or discharge is agreed to in writing and signed by the Company and the Employee. No waiver by either party hereto at any time of any breach by the other party hereto of, or compliance with, any provision of this Agreement to be performed by such other party shall be deemed a waiver of similar or dissimilar provisions or conditions at the same or at any prior or subsequent time.

14.2    **Entire Agreement.** This Agreement sets forth the entire agreement and understanding of the parties relating to the subject matter hereof, and supersedes all prior agreements, arrangements, understandings, prior promises, negotiations or discussions, written or oral, between the parties or any employees, officers or agents of the parties, relating to the subject matter hereof.

14.3    **Governing Law.** The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the State of New York applicable in the case of agreements made and entirely performed in such State.

14.4    **Arbitration.** Any controversy, dispute or claim relating to or arising out of this Agreement, the making, interpretation or breach thereof, shall be fully and finally resolved by binding arbitration conducted by the American Arbitration Association located in New York, New York and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof and any party to the arbitration may, if she so elects, institute proceedings in any court having jurisdiction for the specific performance of such award. The powers of the arbitrator(s) shall include, but not be limited to, the awarding of injunctive relief. The arbitrator(s) may include in any award in the prevailing party's favor the amount of her or its reasonable attorneys' fees and expenses and all other reasonable costs and expenses of the arbitration. In the event that the arbitrator does not rule in favor of the prevailing party in respect of all claims alleged by such party, the arbitrator(s) may include in any award in favor of the prevailing party the amount of her or its reasonable attorneys fees and other expenses and such other reasonable costs and expenses of the arbitration as she deems just and equitable under the circumstances. Except as provided above, each party shall bear her own attorney's fees and expenses and the parties shall bear equally all other costs and expenses of the arbitration. Notwithstanding the foregoing arbitration requirement, the Company may, at its option, specifically enforce its rights under sections 6, 7, 8, 9, and 10 of this Agreement in any state or federal court of competent jurisdiction and the Company shall be entitled to recover from Employee its reasonable attorneys fees and costs in enforcing such provisions.

14.5.    **Severability.** If any provision of this Agreement or the application thereof to any party hereto shall be invalid, illegal or unenforceable in any extent, the remainder of this Agreement and the application thereof shall not be affected and shall be enforceable to the fullest extent permitted by law. Without limiting the generality of the foregoing sentence, to the extent that any provision of this

6

Acknowledgment (Please Initial)

Employee: _____

Agreement is prohibited or ineffective under the any statutory or common law, this Agreement shall be considered amended to the smallest degree possible in order to make the Agreement effective under such statutes or common law.

14.6    Survival. The provisions of Sections 6, 7, 8, 9, 10, 11, 12, 13 and this Section 14 shall survive the termination of this Agreement and shall be binding upon the Employee's personal or legal representatives, executors, administrators, successors, heirs, distributees, devises and legatees.

14.7    Headings. The headings of this Agreement are for convenience of reference only and are not part of the substance of this Agreement.

14.8.    Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original but all of which together will constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have executed this Agreement effective as of the date first written above.

MARWOOD GROUP LLC                              EMPLOYEE

By: _____                    By: _____

John T. Moore                                   Name: Katie Simons Palmer
Chief Executive Officer

7

Acknowledgment (Please Initial)

Employee: _____

# EXHIBIT B

# KURZMAN EISENBERG CORBIN & LEVER, LLP

## ATTORNEYS AT LAW

675 THIRD AVENUE, 18ᵗʰ FLOOR
NEW YORK, NY 10017
(212) 661-2150

OTHER LOCATIONS:
FORT LAUDERDALE, FLORIDA
LONDON, ENGLAND
GENEVA, SWITZERLAND

ONE NORTH BROADWAY
WHITE PLAINS, NEW YORK 10601

TEL: (914) 285-9800
FAX: (914) 285-9855

JOEL S. LEVER
Partner
jlever@kelaw.com
Fax (914) 993-6015

September 10, 2007

**Via Federal Express and (202) 318-4533**

Health Policy Source, Inc.
801 Pennsylvania Avenue, NW
Suite 625-A
Washington, DC 20004
Attention:  Monica Tencate, President
             Dan Boston, Executive Vice President

Re:  Katie Pahner

Dear Ms. Tencate and Mr. Boston:

This letter will confirm that we have been advised by our client, Marwood Group LLC (the "**Company**"), that Katie Pahner, a former employee of the Company has received an offer of employment from your company, Health Policy Source, Inc. ("HPS"). Please be advised that Ms. Pahner is party to an employment agreement with the Company which contains nondisclosure and non-compete provisions, which provide, among other things, that, for a period of two years following the termination of employment with the Company, Ms. Pahner will not "...directly or indirectly engage in or be employed by any business that engages in competitive business activities..." Further, Ms. Pahner may not disclose at <u>any time</u> any confidential trade secret or other information of the Company.

The Company believes that HPS' business is directly competitive with the Company's business for, among other reasons, the following:

1. HPS represents similar, and in some cases, identical clients of the Company such as hedge funds, healthcare research firms, investment banks, healthcare companies, trade associations in the area of healthcare consulting;

2. As your website denotes, HPS provides healthcare consulting services including "tracking and monitoring legislation and regulations", "providing political assessments and strategic guidance", "analyzing current laws and regulations", "providing hearing summaries and analysis of key policy events and "intelligence gathering". These are exactly the services that the Company's research group provides; and

KURZMAN EISENBERG CORBIN & LEVER, LLP
Health Policy Source, Inc.
September 10, 2007
Page 2

3.  Regardless of overlapping client concerns, the general business activities of HPS are almost identical to those of the Company.  HPS is a healthcare specialty firm that both lobbys and provides information tracking on legislative and regulatory events in the healthcare field.

The Company hereby demands that HPS not interfere with the Company's agreement with Ms. Pahner or otherwise condone any violation of the restrictions contained in such employee's agreements with the Company.  Inducing another to violate a contract may constitute tortious interference with the contractual relationship.  Please be aware that the Company will take all appropriate legal action to uphold its agreements and protect its rights.

Please confirm that:

    (i)      HPS has not employed Ms. Pahner, and will not employ Ms. Pahner in any area of HPS' organization;

    (ii)     HPS has not received and will not receive from Ms. Pahner any trade secret or confidential information belonging to the Company;

    (iii)    HPS and its representatives have not and will not seek to interfere with the restrictive contractual relations between the Company and Ms. Pahner.

Please return your confirmation to the undersigned.

Very truly yours,

*Joel S. Lever*

Joel S. Lever

ACCEPTED AND AGREED THIS

_____DAY OF _____, 2007

HEALTH POLICY SOURCE, INC.

By: _____
      Name:
      Title:

# EXHIBIT C

Representing Management Exclusively in Workplace Law and Related Litigation

# jackson|lewis

Attorneys at Law

| Jackson Lewis LLP | ATLANTA, GA | LOS ANGELES, CA | PROVIDENCE, RI |
| | BOSTON, MA | MIAMI, FL | RALEIGH-DURHAM, NC |
| One North Broadway | CHICAGO, IL | MINNEAPOLIS, MN | RICHMOND, VA |
| | CLEVELAND, OH | MORRISTOWN, NJ | SACRAMENTO, CA |
| White Plains, New York 10601 | DALLAS, TX | NEW YORK, NY | SAN FRANCISCO, CA |
| | DENVER, CO | ORANGE COUNTY, CA | SEATTLE, WA |
| Tel 914 328-0404 | GREENVILLE, SC | ORLANDO, FL | STAMFORD, CT |
| Fax 914 328-1882 | HARTFORD, CT | PITTSBURGH, PA | WASHINGTON, DC REGION |
| | HOUSTON, TX | PORTLAND, OR | WHITE PLAINS, NY |
| www.jacksonlewis.com | LONG ISLAND, NY | | |

September 19, 2007

**VIA FEDERAL EXPRESS AND**
**Email: ctencate@healthpolicysource.com**
**dboston@healthpolicysource.com**

Health Policy Source, Inc.
801 Pennsylvania Avenue, NW
Suite 625-A
Washington, DC 20004
Attention:    Monica Tencate, President
              Dan Boston, Executive Vice-President

Re:    Katie Pahner

Dear Ms. Tencate and Mr. Boston:

The undersigned has been retained by Marwood Group, LLC as special counsel to prosecute breaches of restrictive covenants, and possible other legal proceedings, contained in an employment agreement with the above referenced individual entered into with Marwood Group, LLC ("Marwood") on or about July 20, 2006. It is my client's understanding that Health Policy Source, Inc. ("HPS") has made an offer of employment to Ms. Pahner, or that she has already commenced her employment with HPS by this time.

It is also my understanding that Marwood's counsel, Joel Lever, Esq. of the firm of Kurzman Eisenberg Corbin & Lever, LLP, sent HPS correspondence via Federal Express on September 10, 2007 (the delivery receipt from Fed Ex indicates the letter was received on September 11, 2007). The contents of that letter discuss Marwood's concern that HPS's hiring of Ms. Pahner would be violative of Ms. Pahner's non-competition agreement. It was seriously requested that HPS acknowledge that it would not interfere with the contractual obligations between Marwood and Ms. Pahner. HPS neither signed nor·returned a copy of Mr. Lever's letter acknowledging HPS's intent refrain from such interference. HPS did not attempt to contact Mr. Lever directly or through HPS's legal counsel to discuss the employment offer of Ms. Pahner.

Please be advised that my firm was asked by Marwood to commence all required proceedings against Ms. Pahner, including but not limited to seeking a Temporary Restraining



Attorneys at Law

Order and Preliminary Injunction to prohibit her from commencing or continuing her employment with HPS. I have also been asked to investigate the possibility of commencing litigation against HPS as well. Prior to engaging in such proceedings, however, Marwood has requested Ms. Pahner to contact me directly or through legal counsel to discuss her new or anticipated employment.

This letter is to advise you that unless I hear from Ms. Pahner or her legal counsel by the close of business (i.e., 5:00 P.M. EDT) on **Friday, September 21, 2007,** I have been instructed to begin the process stated above. Similarly, if HPS wishes to engage in any meaningful discussions before Marwood proceeds, please do not hesitate to contact me prior to the close of business on Friday, September 21, 2007. Please be guided accordingly.

Very truly yours,

JACKSON LEWIS LLP

Anthony J. DiOrio

AJD/mg

# EXHIBIT D

# KURZMAN EISENBERG CORBIN & LEVER, LLP

## ATTORNEYS AT LAW

675 THIRD AVENUE, 18th FLOOR
NEW YORK, NY 10017
(212) 661-2150

OTHER LOCATIONS:
FORT LAUDERDALE, FLORIDA
LONDON, ENGLAND
GENEVA, SWITZERLAND

ONE NORTH BROADWAY
WHITE PLAINS, NEW YORK 10601

TEL: (914) 285-9800
FAX: (914) 285-9855

JOEL S. LEVER
Partner
jlever@kelaw.com
Fax (914) 993-6015

September 10, 2007

**Via Federal Express**

Katie Pahner
904 N. Lebanon Street
Arlington, VA 22205

Dear Ms. Pahner:

This letter will confirm that we have been advised by our client, Marwood Group LLC (the "**Company**"), that you have accepted an offer of employment with Health Policy Source, Inc. ("**HPS**"), which the Company believes is in violation of your Employment Agreement with the Company dated July 20, 2006 (the "**Employment Agreement**"). As you are aware, your Employment Agreement with the Company contains nondisclosure and non-compete provisions, which provide, among other things, that, for a period of two years following the termination of employment with the Company, you will not "…directly or indirectly engage in or be employed by any business that engages in competitive business activities…" Further, you are prohibited from disclosing at <u>any time</u> any confidential trade secret or other information of the Company.

The Company believes that HPS' business is directly competitive with the Company's business for, among other reasons, the following:

1. HPS represents similar, and in some cases, identical clients of the Company such as hedge funds, healthcare research firms, investment banks, healthcare companies, trade associations in the area of healthcare consulting;

2. As its website denotes, HPS provides healthcare consulting services including "tracking and monitoring legislation and regulations", "providing political assessments and strategic guidance", "analyzing current laws and regulations", "providing hearing summaries and analysis of key policy events" and "intelligence gathering". These are exactly the services that the Company's research group provides; and

3. Regardless of overlapping client concerns, the general business activities of HPS are almost identical to those of the Company. HPS is a healthcare specialty firm that both lobbys and provides information tracking on legislative and regulatory events in the healthcare field.

KURZMAN EISENBERG CORBIN & LEVER, LLP
    Katie Pahner
    September 10, 2007
    Page 2

Please confirm that:

| | | |
|---|---|---|
| (i) | You will not accept employment with HPS in any area of HPS' organization; |
| (ii) | You will not disclose any trade secret or confidential information belonging to the Company to HPS or any other entity; and |
| (iii) | You acknowledge and will comply with the confidentiality and non-compete provisions of your Employment Agreement. |

    Please be aware that the Company will take all appropriate legal action to uphold its agreements and protect its rights. Please return your confirmation to the undersigned.

Very truly yours,

*Joel S. Lever*

Joel S. Lever

ACCEPTED AND AGREED THIS

_____ DAY OF _____, 2007

_____

Name: Katie Pahner

# EXHIBIT E

# jackson | lewis
Attorneys at Law

Representing Management Exclusively in Workplace Law and Related Litigation

| | | |
|---|---|---|
| **Jackson Lewis LLP** | ATLANTA, GA | LOS ANGELES, CA | PROVIDENCE, RI |
| | BOSTON, MA | MIAMI, FL | RALEIGH-DURHAM, NC |
| **One North Broadway** | CHICAGO, IL | MINNEAPOLIS, MN | RICHMOND, VA |
| | CLEVELAND, OH | MORRISTOWN, NJ | SACRAMENTO, CA |
| **White Plains, New York 10601** | DALLAS, TX | NEW YORK, NY | SAN FRANCISCO, CA |
| | DENVER, CO | ORANGE COUNTY, CA | SEATTLE, WA |
| **Tel 914 328-0404** | GREENVILLE, SC | ORLANDO, FL | STAMFORD, CT |
| | HARTFORD, CT | PITTSBURGH, PA | WASHINGTON, DC REGION |
| **Fax 914 328-1882** | HOUSTON, TX | PORTLAND, OR | WHITE PLAINS, NY |
| **www.jacksonlewis.com** | LONG ISLAND, NY | | |

September 20, 2007

**VIA FEDERAL EXPRESS AND**
**Email: mksimons@gmail.com**

Katie Simons Pahner
904N. Lebanon Street
Arlington, VA 22205

Re:    Employment Contract with The Marwood Group,
LLC

Dear Ms. Pahner:

The undersigned has been retained by Marwood Group, LLC as special counsel to prosecute a breach of your restrictive covenants contained in the employment agreement you entered into with Marwood Group, LLC ("Marwood") on or about July 20, 2006.

It is my understanding that Marwood's counsel, Joel Lever, Esq. of the firm of Kurzman Eisenberg Corbin & Lever, LLP, sent you correspondence via Federal Express on September 10, 2007 (the delivery receipt from Fed Ex indicates the letter was received on September 11, 2007). The contents of that letter discuss Marwood's concern that your anticipated employment with Health Policy Source, Inc. ("HPS") would be in violation of your restrictive covenants. You neither signed nor returned a copy of that letter acknowledging your intent to uphold your covenants, and you did not attempt to contact Mr. Lever directly or through your own legal counsel.

Please be advised that my firm was asked by Marwood to commence all required proceedings against you, including but not limited to seeking a Temporary Restraining Order and Preliminary Injunction to prohibit you from commencing or continuing your employment with HPS. Prior to engaging in such proceedings, however, Marwood would like to give you one last opportunity to make contact with us to discuss your new or anticipated employment.

Therefore, I have been instructed by Marwood to defer filing such papers for an abbreviated period of time in order to give you the opportunity to review this letter and have you or your legal representative respond to this very serious situation.

Accordingly, unless I hear from either you directly, or your legal representative by the close of business (i.e., 5:00 P.M. EDT) on **Friday, September 21, 2007**, I shall begin the process stated above and you can expect to hear from me early next week regarding attendance at an application for *ex parte* relief from the court.

Very truly yours,

JACKSON LEWIS LLP

Anthony J. DiOrio

AJD/mg

Representing Management Exclusively in Workplace Law and Related Litigation

# jackson|lewis
Attorneys at Law

Jackson Lewis LLP

One North Broadway

White Plains, New York 10601

Tel 914 328-0404

Fax 914 328-1882

www.jacksonlewis.com

| | | |
|---|---|---|
| ATLANTA, GA | LOS ANGELES, CA | PROVIDENCE, RI |
| BOSTON, MA | MIAMI, FL | RALEIGH-DURHAM, NC |
| CHICAGO, IL | MINNEAPOLIS, MN | RICHMOND, VA |
| CLEVELAND, OH | MORRISTOWN, NJ | SACRAMENTO, CA |
| DALLAS, TX | NEW YORK, NY | SAN FRANCISCO, CA |
| DENVER, CO | ORANGE COUNTY, CA | SEATTLE, WA |
| GREENVILLE, SC | ORLANDO, FL | STAMFORD, CT |
| HARTFORD, CT | PITTSBURGH, PA | WASHINGTON, DC REGION |
| HOUSTON, TX | PORTLAND, OR | WHITE PLAINS, NY |
| LONG ISLAND, NY | | |

September 19, 2007

**VIA FEDERAL EXPRESS AND**
**Email: mksimons@gmail.com**

Katie Simons Pahner
4020 North Washington Blvd.
#410
Arlington, VA 22201

                     Re:     <u>Employment Contract with The Marwood Group,</u>
                               <u>LLC</u>

Dear Ms. Pahner:

        The undersigned has been retained by Marwood Group, LLC as special counsel to prosecute a breach of your restrictive covenants contained in the employment agreement you entered into with Marwood Group, LLC ("Marwood") on or about July 20, 2006.

        It is my understanding that Marwood's counsel, Joel Lever, Esq. of the firm of Kurzman Eisenberg Corbin & Lever, LLP, sent you correspondence via Federal Express on September 10, 2007 (the delivery receipt from Fed Ex indicates the letter was received on September 11, 2007). The contents of that letter discuss Marwood's concern that your anticipated employment with Health Policy Source, Inc. ("HPS") would be in violation of your restrictive covenants. You neither signed nor returned a copy of that letter acknowledging your intent to uphold your covenants, and you did not attempt to contact Mr. Lever directly or through your own legal counsel.

        Please be advised that my firm was asked by Marwood to commence all required proceedings against you, including but not limited to seeking a Temporary Restraining Order and Preliminary Injunction to prohibit you from commencing or continuing your employment with HPS. Prior to engaging in such proceedings, however, Marwood would like to give you one last opportunity to make contact with us to discuss your new or anticipated employment.



**Attorneys at Law**

Katie Simons Pahner
September 19, 2007
Page 2

Therefore, I have been instructed by Marwood to defer filing such papers for an abbreviated period of time in order to give you the opportunity to review this letter and have you or your legal representative respond to this very serious situation.

Accordingly, unless I hear from either you directly, or your legal representative by the close of business (i.e., 5:00 P.M. EDT) on **Friday, September 21, 2007**, I shall begin the process stated above and you can expect to hear from me early next week regarding attendance at an application for *ex parte* relief from the court.

Very truly yours,

JACKSON LEWIS LLP

Anthony J. DiOrio

AJD/mg

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Marwood Group LLC | Health Policy Source Inc., Monica Tencate, individually, Daniel Boston, individually, John Doe I and John Doe II |

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Tyler A. Brown, Esq.
Jackson Lewis, LLP
8614 Westwood Center Drive, Suite 950
Vienna, VA 22182    703-821-2189

ATTORNEYS (IF KNOWN)

N/A

---

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

○ 2 U.S. Government Defendant

○ 3 Federal Question (U.S. Government Not a Party)

◉ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ◉ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ◉ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

**IV.  CASE ASSIGNMENT AND NATURE OF SUIT**

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

○ **E. General Civil (Other)**        **OR**        ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. Habeas Corpus/ 2255 | ○ H. Employment Discrimination | ○ I. FOIA/PRIVACY ACT | ○ J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. Labor/ERISA (non-employment) | ○ L. Other Civil Rights (non-employment) | ◉ M. Contract | ○ N. Three-Judge Court |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☒ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

28 USC Section 1332, Tortious Interference with Contractual Relations

| VII. REQUESTED IN COMPLAINT | CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23 | DEMAND $ _____ JURY DEMAND: | Check YES only if demanded in complaint YES ☐  NO ☐ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 10/30/07    SIGNATURE OF ATTORNEY OF RECORD _____

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.